UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NORBIVI NASIMOVA, individually and on behalf of
all others similarly situated,

                                  Plaintiff,

                   -against-

ATTENTIVE HOME CARE AGENCY INC. d/b/a
ALWAYS HOME CARE, ALWAYS HOME CARE
AGENCY INC., YELENA PUSTILNIK and JOHN
DOES #1-10,

                                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ECF**

16 Civ. 01005 (SJ)(PK)

 

**DEFENDANTS ATTENTIVE HOME CARE AGENCY INC.'S AND YELENA
PUSTILNIK'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S
MOTION FOR CERTIFICATION OF CLASS AND COLLECTIVE ACTION**

# TABLE OF CONTENTS

**Page**

**PRELIMINARY STATEMENT** ...................................................................................1

**STATUTORY AND REGULATORY BACKGROUND** .............................................3

    A.    FLSA Exemptions and Regulations Applicable to Home Health Aides ................3

    B.    New York Exemptions and Regulations Applicable to Home Health Aides ..........5

**STATEMENT OF FACTS** ..........................................................................................7

    A.    Attentive's Home Health Aides Provide Services To Patients Pursuant to Individualized Plans of Care ...................................................................................7

    B.    Attentive's Policies and Training Regarding Live-In Shifts...................................8

    C.    Nasimova's Employment at Attentive ...................................................................9

    D.    Pay and Benefits Provided by Attentive ..............................................................10

    E.    Nasimova's DOL Claim ........................................................................................12

    F.    Nasimova's Claims and the Purported Class .......................................................12

**ARGUMENT** ...........................................................................................................13

**I.**    **NASIMOVA'S PROPOSED COLLECTIVE ACTION SHOULD NOT BE CERTIFIED BECAUSE SHE IS NOT SIMILARLY SITUATED TO OTHER CLASS MEMBERS**...........................................................................15

**II.**    **NASIMOVA HAS NOT SHOWN THAT HER PROPOSED STATE LAW CLASS ACTION MEETS RULE 23'S REQUIREMENTS** ........................19

    A.    Nasimova Cannot Establish that Common Issues Predominate Because Determining the Number of Hours Worked by Aides Working Live-In Shifts Is an Individualized Inquiry .........................................................................19

    B.    The Applicability of the Companionship Services Exemption Also Requires Individualized Inquiry .........................................................................21

    C.    Nasimova's Other State Law Claims Necessitate Individualized Inquiries ..........21

    D.    Nasimova Has Not Shown and Cannot Show that She Is a Typical or Adequate Class Representative ..........................................................................23

**CONCLUSION** ........................................................................................................25

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Andryeyeva v New York Health Care, Inc.*,
994 N.Y.S.2d 278 (Sup Ct. Kings Cnty. 2014)......................................................................20

*Ansoumana v. Gristede's Operating Corp.*,
201 F.R.D. 81 (S.D.N.Y. 2001) ...........................................................................................24

*Bangoy v. Total Homecare Sols., LLC*,
2015 U.S. Dist. LEXIS 177859 (S.D. Ohio Dec. 21, 2015) ..................................................17

*Bonn-Wittingham v. Project O.H.R. (Office for Homecare Referral), Inc.*,
2016 U.S. Dist. LEXIS 172767 (E.D.N.Y. Dec. 12, 2016) .......................................17, 18, 20

*Brown v. Kelly*,
609 F.3d 467 (2d Cir. 2010)................................................................................................14

*Cowell v. Utopia Home Care, Inc.*,
2016 U.S. Dist. LEXIS 104495 (E.D.N.Y. Aug. 8, 2016)...................................13, 15, 16, 21

*Fernandez-Vargas v. Gonzales*,
548 U.S. 30 (2000)..............................................................................................................17

*Flamer v. Maxim Healthcare Servs.*,
2015 U.S. Dist. LEXIS 182416 (D. Md. Oct. 26, 2015).......................................................17

*Franco v. Allied Interstate LLC*,
2015 U.S. Dist. LEXIS 160688 (S.D.N.Y. Nov. 30, 2015) ..................................................24

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
903 F.2d 176 (2d Cir. 1990)................................................................................................25

*Gen. Tel. Co. of the Sw. v. Falcon*,
457 U.S. 147 (1982)............................................................................................................23

*Guaman v. Krill Contr. Inc.*,
2015 U.S. Dist. LEXIS 74567 (E.D.N.Y. May 20, 2015) ....................................................23

*Hoffmann-La Roche v. Sperling*,
493 U.S. 165 (1989)............................................................................................................16

*Home Care Ass'n of Am. v. Weil*,
76 F. Supp. 3d 138 (D.D.C. 2014) ........................................................................................4

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Home Care Ass'n of Am. v. Weil*,
78 F. Supp. 3d 123 (D.D.C. 2015) ............................................................................4

*Home Care Ass'n of Am. v. Weil*,
799 F.3d 1084 (D.C. Cir. 2015) ................................................................................4

*In re Initial Pub. Offering Sec. Litig.*,
471 F.3d 24 (2d Cir. 2006)......................................................................................14

*Kinkead v. Humana, Inc.*,
2016 U.S. Dist. LEXIS 143000 (D. Conn. Oct. 13, 2016) ....................................17

*Lai Chan v. Chinese-Am. Planning Council Home Attendant Program, Inc.*,
21 N.Y.S.3d 814 (Sup. Ct. N.Y. Cnty. 2015) ........................................................20

*Long Island Care At Home, Ltd. v. Coke*,
551 U.S. 158 (2007).................................................................................................3

*Moreno v. Future Care Health Servs., Inc.*,
2015 N.Y. Misc. LEXIS 3371 (Sup. Ct. Kings Cnty. May 4, 2015) ................21, 22

*Muhammed Chowdhury v. Hamza Express Food Corp.*,
2016 U.S. App. LEXIS 21870 (2d Cir. Dec. 7, 2016) ...........................................25

*Myers v. Hertz Corp.*,
624 F.3d 537 (2d Cir. 2010).........................................................................13, 19, 20

*Natural Res. Defense Council, Inc. v. U.S. E.P.A.*,
683 F.2d 752 (3rd Cir. 1982) ..................................................................................17

*O'Shea v. Littleton*,
414 U.S. 488 (1974)...........................................................................................24, 25

*Salon Fad v. L'Oréal USA, Inc.*,
No. 10 Civ. 5063 (DLC), 2011 U.S. Dist. LEXIS 103936 (S.D.N.Y. Sep. 14,
2011) .......................................................................................................................15

*Severin v. Project OHR, Inc.*,
2012 U.S. Dist. LEXIS 85705 (S.D.N.Y. June 20, 2012)............................... *passim*

*Skidmore v. Swift & Co.*,
323 U.S. 134 (1944)................................................................................................17

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Tokhtaman v. Human Care, LLC*,
    2016 NY Slip Op 31606(U) (Sup. Ct. N.Y. Cnty. 2016)........................................................20

*Torres v. Ridgewood Bushwick Senior Citizens Homecare Council, Inc.*,
    2009 U.S. Dist. LEXIS 33622 (E.D.N.Y. Apr. 22, 2009) .......................................................4

*Wal-Mart Stores, Inc.*, *v. Dukes*,
    564 U.S. 338 (2011)................................................................................................................19

**Statutes**

Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ................................................................ *passim*

New York City Earned Sick Time Act ....................................................................................11

N.Y. Lab. Law § 198 ..........................................................................................................6, 23

Wage Parity Act, N.Y. Pub. Health Law § 3614-c ............................................................. *passim*

Wage Theft Prevention Act, N.Y. Lab. Law § 195 ............................................................ *passim*

**Regulations**

29 C.F.R. § 552.6 (1975) ........................................................................................................3

29 C.F.R. § 552.109 (1975) ....................................................................................................3

78 Fed. Reg. 60454 (Oct. 1, 2013)..........................................................................................4

80 Fed. Reg. 65646 (Oct. 27, 2015).........................................................................................4

10 N.Y.C.R.R. § 700.2...........................................................................................................7

12 N.Y.C.R.R. § 142-2.1 ...................................................................................................5, 6

12 N.Y.C.R.R. § 142-2.2 ........................................................................................................5

12 N.Y.C.R.R. §142-2.4 .........................................................................................................6

**Other Authorities**

Counsel Opinion Letter, N.Y. Dep't of Labor, RO-09-00169......................................................6

Fed. R. Civ. P. 23 ............................................................................................................. *passim*

iv

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

N.Y. Dep't of Health, *Home Care Worker Wage Parity FAQs* (Jan. 2012 and Jan. 2014), ....................................................................................................................6

U.S. Dep't of Labor, *Field Assistance Bulletin No. 2016-1* (Apr. 25, 2016)..................................5

U.S. Dep't of Labor, Mar. 15, 1995 Opinion Letter, 1995 DOLWH LEXIS 22........................3, 4

9410176

Attentive Home Care Agency Inc. ("Attentive") and Yelena Pustilnik (collectively, "Defendants") submit this memorandum in opposition to Plaintiff's Motion for Certification of Class and Collective Action with respect to her federal and state wage and hour claims.

## PRELIMINARY STATEMENT

Plaintiff Norbivi Nasimova seeks to bring various wage and hour claims on behalf of a broad class of Attentive home health aide employees without offering any evidence of an improper policy or practice that could support proceeding on a class basis here.  Her central claim—that she did not receive adequate minimum and overtime wages—turns on the highly individualized, fact-intensive questions of whether she fell within the companionship and live-in exemptions that may apply to home health aides under federal and state law.  Discovery has confirmed that to determine whether those exemptions applied, a factfinder will need to resolve disputed issues such as how much heavy cleaning work Nasimova performed and how much uninterrupted sleep she got while working 24-hour shifts.  Federal courts in New York considering nearly identical claims by home health aides have held that because they require such an individualized, fact-intensive inquiry, they cannot properly be litigated on a collective or class basis.  The Court should do the same here, for numerous reasons.

*First*, Nasimova has not shown and cannot show that the members of the purported Fair Labor Standards Act ("FLSA") collective action are similarly situated.  Her minimum and overtime claims under the federal FLSA depend on whether she qualified for the companionship exemption provided for under federal law until at least January 2015, by which time Nasimova was no longer employed by Attentive.  Multiple federal courts in New York have held that the companionship exemption's applicability cannot be determined on a class basis.  Further, after Nasimova's tenure at Attentive ended in 2014, the federal regulation governing the companionship exemption changed—but whether the change became effective in January or

1

November 2015 is disputed here.  Because it does not matter to her claim, Nasimova has no personal interest in litigating this question and is not similarly situated to individuals who do.

*Second*, Nasimova cannot satisfy Rule 23's even more stringent standards for proceeding on a class basis with respect to her New York state law claims.  She has not shown and cannot show that Rule 23's commonality requirement is met because those claims require the determination of the same individualized questions as her FLSA claim, or otherwise turn on individualized facts such as whether each purported class member received a wage notice required by state law.  Under New York state law, the question of whether Nasimova was entitled to more pay, and at what rate, depends on whether the federal companionship exemption applies and whether she qualified as a "live-in" aide entitled to pay for 13 hours during a 24-hour shift.  Like her FLSA claims, her state claims thus similarly require a fact-intensive inquiry into the nature of services she provided to her patient based on the patient's individual needs.  Her other state law claims, including those under the Wage Parity Act and Wage Theft Prevention Act, would also require an aide-by-aide examination of the evidence, because Nasimova has not shown that Attentive had any *policy* of non-compliance with those laws.

*Third,* Nasimova also cannot meet the typicality and adequacy requirements for Rule 23 certification for the proposed state law class.  She seeks to represent a class including individuals who worked at Attentive long after she left for another employer in March 2014, but she has no personal interest in litigating issues concerning the time period after her employment ended.  She is also subject to a unique defense because she has already recovered for a purported underpayment of wages through a parallel complaint she filed with the New York State Department of Labor ("NYDOL"), which Attentive chose not to contest.

For these reasons, this Court should deny Nasimova's Motion for Class Certification and Collective Action in its entirety.

9410176

## STATUTORY AND REGULATORY BACKGROUND

Under federal law, home health aides are entitled to minimum wages and to overtime wages unless the companionship exemption applies.  The rate at which their pay must be calculated depends on whether the live-in exemption applies.

### A.       FLSA Exemptions and Regulations Applicable to Home Health Aides

Under the FLSA, employees must receive an overtime premium of at least one and one-half times their regular hourly rate for any hours worked in excess of forty during a single workweek.  29 U.S.C. § 207.  However, Section 13(a)(15) of the FLSA exempts from this requirement "any employee employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves[.]"  29 U.S.C. § 213(a)(15).  During Nasimova's employment at Attentive, "companionship services" was defined by regulation to mean:

> those services which provide fellowship, care, and protection for a person who, because of advanced age or physical or mental infirmity, cannot care for his or her own needs. Such services may include household work related to the care of the aged or infirm person such as meal preparation, bed making, washing of clothes, and other similar services. *They may also include the performance of general household work: Provided, however, that such work is incidental, i.e., does not exceed 20 percent of the total weekly hours worked*.

29 C.F.R. § 552.6 (1975) (emphasis added).  Federal regulations also expressly provided that an employee "employed by an employer or agency other than the family or household using their services" was still exempt under the FLSA if the employee performed "companionship services" as defined by regulation. 29 C.F.R. § 552.109(a) (1975); *see also Long Island Care At Home, Ltd. v. Coke*, 551 U.S. 158, 162 (2007) (holding regulation "valid and binding").

The U.S. Department of Labor ("DOL") has also provided further interpretation of what types of "household work" count and do not count toward the 20% threshold, explaining in an opinion letter that activities "relat[ing] to personal care of the patient," such as "cleaning the

3

patient's bedroom, bathroom or kitchen, picking up groceries, medicine, and dry cleaning," are

"exempt work."  However, "heavy cleaning," such as "cleaning refrigerators, ovens, trash or

garbage removal and cleaning the rest of a 'trashy' house," is not exempt work and counts

toward the 20% threshold after which the companionship exemption no longer applies. 1995

DOLWH LEXIS 22 (Opinion Letter, United States Department of Labor, Mar. 15, 1995); *see*

*Torres v. Ridgewood Bushwick Senior Citizens Homecare Council, Inc.*, No. 08-CV-3678

(CBA), 2009 U.S. Dist. LEXIS 33622, at *13 (E.D.N.Y. Apr. 22, 2009) (DOL's 1995 opinion

letter was entitled to deference).

In October 2013, the DOL issued a new regulation narrowing the definition of

"companionship services" and removing home healthcare workers employed by third-party

employers from the ambit of the rule.  *See* Application of the Fair Labor Standards Act to

Domestic Service, 78 Fed. Reg. 60454 (Oct. 1, 2013) (codified at 29 C.F.R. § 552).  The

regulation was drafted to take effect on January 1, 2015, *see id.* at 60494–95, but prior to that

date litigation was initiated seeking to enjoin its enforcement.  *See Home Care Ass'n of Am. v.*

*Weil*, 76 F. Supp. 3d 138, 139–40 (D.D.C. 2014); *Home Care Ass'n of Am. v. Weil*, 78 F. Supp.

3d 123, 124 (D.D.C. 2015) (vacating the rule).  In August 2015, the D.C. Circuit Court of

Appeals upheld the rule change, *see Home Care Ass'n of Am. v. Weil*, 799 F.3d 1084, 1087 (D.C.

Cir. 2015), and the DOL issued additional guidance stating that it would not institute

enforcement proceedings under the new rule until thirty days after the mandate in the litigation

issued, *i.e.*, until November 12, 2015.  *See* Application of the Fair Labor Standards Act to

Domestic Service: Dates of Previously Announced 30-Day Period of Non-Enforcement, 80 Fed.

Reg. 65646 (Oct. 27, 2015).

The DOL has also issued guidance governing the calculation of hours worked by

domestic service employees who work 24-hour shifts.  The DOL permits employers to deduct up

to three hours of meal breaks and eight hours of sleep time from each 24-hour shift, provided that during that shift, certain conditions—including that an employee has adequate sleeping facilities and can regularly get at least five hours of uninterrupted sleep—are met.  *See* U.S. Dep't of Labor, *Field Assistance Bulletin No. 2016-1* (Apr. 25, 2016) at 2-8, *available at* https://www.dol.gov/whd/FieldBulletins/fab2016_1.pdf; *see also* https://www.dol.gov/whd/homecare/faq.htm.

### B.    New York Exemptions and Regulations Applicable to Home Health Aides

In general, employees who are exempt from the FLSA's overtime requirements are also exempt under the New York Labor Law ("NYLL").  *See* 12 N.Y.C.R.R. § 142-2.2.  However, employees who are exempt under Section 13 of the FLSA—which includes the companionship exemption—must receive "overtime at a wage rate of one and one-half times the basic minimum hourly rate."[1]  *Id.* § 142-2.2.  Non-exempt employees must receive overtime pay at a different rate, namely, "one and one-half times the employee's regular rate."  *Id.*

As under federal law, New York law permits employers to exclude certain time periods from the hours worked by employees working 24-hour shifts.  Under the live-in regulation, a residential employee, *i.e.*, one who "live[s] on the premises of the employer," is not considered to be working "during his or her normal sleeping hours solely because he is required to be on call during such hours," or "at any other time when he or she is free to leave the place of employment."  12 N.Y.C.R.R. § 142-2.1(b).  Since at least March 11, 2010, the NYDOL has interpreted New York's regulations as consistent with the federal rule for live-in employees, stating that employees may be paid for 13 hours of work in a 24-hour period if "they are afforded

---

[1] The New York state minimum wage was $7.25 from July 24, 2009 through December 30, 2013; $8.00 from December 31, 2013 through December 30, 2014; $8.75 from December 31, 2014 to December 30, 2015; and $9.00 from December 31, 2015 through December 31, 2016.  In New York City, the current minimum wage is $11.00 per hour.

9410176

at least eight hours of sleep and actually receive five hours of uninterrupted sleep, and that they are afforded three hours for meals." Counsel Opinion Letter, N.Y. Dep't of Labor, RO-09-00169 Live-In Companions (March 11, 2010) (the "NYDOL Opinion Letter"), *available at* https://labor.ny.gov/legal/counsel/pdf/Other/RO-09-0169%20-%20Live-In%20Companions.pdf (interpreting 12 N.Y.C.R.R. § 142-2.1).

New York has additional laws and regulations applicable to home health aides' pay. For example, it provides for "spread of hours" wages equal to an additional hour of pay at the state minimum wage rate for shifts in which an employee works more than ten hours. 12 N.Y.C.R.R. §142-2.4. In addition, New York's Wage Parity Act sets a total compensation requirement for home health care workers in New York City and its surrounding counties.[2] N.Y. Pub. Health Law § 3614-c. And New York's Wage Theft Prevention Act ("WTPA") requires that employers provide the following information, among other information, in a notice at the time of hire and in regular wage statements (pay stubs): the employee's rate of pay, basis of pay (*i.e.*, by the hour, shift, or on a salary basis) and, in some cases, hours worked. N.Y. Lab. Law §§ 195(1)(a)–(b), 195(3). Additional information regarding the "regular hourly rate and overtime rate of pay" is required for non-exempt employees. *Id.* The WTPA also provides that having properly paid an employee is an affirmative defense to any claim regarding a failure to provide the requisite wage statements. N.Y. Lab. Law § 198(1-d) (also providing a good-faith defense).

---

[2] Pursuant to the Wage Parity Act, beginning on March 1, 2012, home health aides were entitled to total compensation equivalent to $10.35 per hour, including $9.00 in cash and $1.35 in additional benefits such as paid vacation and health insurance. Beginning on March 1, 2014, this rate was raised to $14.09 per hour, consisting of $10.00 in cash, $1.69 of additional wages, and $2.40 of paid benefits. N.Y. Dep't of Health, *Home Care Worker Wage Parity FAQs* (Jan. 2012 and Jan. 2014), *available at* https://www.health.ny.gov/health_care/medicaid/redesign/2012-01-20_worker_parity_faq.htm, https://www.health.ny.gov/health_care/medicaid/redesign/2014-01-17_faq_information.htm.

9410176

**STATEMENT OF FACTS**

**A.     Attentive's Home Health Aides Provide Services To Patients Pursuant to Individualized Plans of Care**

Attentive is a home health care agency that contracts with numerous long-term care agencies to provide home health services to patients.  (Ruzumna Decl. Ex. A ("Pustilnik Tr.") at 23:7–20; 28:10–29:4.)  The long-term care agencies develop an individualized, physician-approved plan of care for each patient detailing, *inter alia*, what types of services and how many hours per day of care the patient requires.  (Golub Decl. ¶¶ 6–7; Pustilnik Decl. ¶ 4.)  Attentive's personal care and home health aides provide services pursuant to these plans of care.  (Pustilnik Tr. at 45:4–8, 134:15–137:4.)  Nasimova was employed by Attentive as a personal care aide from April 2012 through March 1, 2014.  (*Id.*at 153:13–154:15; Ruzumna Decl. Ex. B ("Nasimova Tr.") at 20:20–21:2; Ruzumna Decl. Ex. C.)  Under state law, personal care aides and home health aides provide similar, but not identical services to patients.  *See* 10 N.Y.C.R.R. §§ 700.2(b)(9) & (14).

Attentive assigns aides to shifts depending on the patient's plan of care.  (Pustilnik Decl. ¶ 4.)  Patients who need round-the-clock care may be cared for either by a single aide working a 24-hour "live-in" shift, or by two aides working a "split" shift of 12 hours each, depending on the specific patient's needs as identified in the plan of care.  (Golub Decl. ¶¶ 6–7, 11; Pustilnik Decl. ¶ 4.)  A live-in shift, such as that which Nasimova was assigned to work, is one in which the aide works for 13 hours in a 24-hour period but sleeps in the patient's home.  (Golub Decl. ¶ 11; Pustilnik Decl. ¶ 4; Lokshin Decl. Ex. A.)  A live-in shift is authorized if the patient's needs allow the aide to receive regular meal breaks and take eight hours of sleep, at least five of which are uninterrupted.  (Lokshin Decl. Ex. A.)   Aides may be assigned to work different numbers and types of shifts each week depending on their preference and availability.  (Pustilnik

Decl. ¶ 5.)  The vast majority of Attentive's aides do not work live-in shifts.  (*Id.*)

Attentive does not determine whether patients should be cared for via a live-in shift or a split shift.  That determination is made by the long-term care agency.  (Golub Decl. ¶¶ 6–7; Pustilnik Decl. ¶ 4.)  ████████████████████████████████████████

████████████████████████████  (Golub Decl. ¶¶ 12–13 & Ex. A.)  █████

████████████████████████████████████████████

████████████████  (  *Id.*¶¶ 6-7.)  ██████████

████████████████  (  *Id.* ¶ 6; Pustilnik Decl. ¶ 4.)  ████████████

████████████████████████████████████████████

████████████████████████  (Golub Decl. ¶ 16 & Ex. A.)

## B.    Attentive's Policies and Training Regarding Live-In Shifts

Attentive pays aides who work live-in shifts for 13 hours of work during a 24-hour shift, deducting three hours for meal breaks and eight hours for sleep during each shift.  (Pustilnik Decl. ¶ 6; Lokshin Decl. Ex. A.)  Attentive informs its employees of this practice during the orientation process, and has policies in place to ensure that live-in aides are being paid accurately based on the hours they work.  (Pustilnik Decl. ¶¶ 6–7.)  These policies are explained during orientation and provided to aides in written form in Attentive's employee handbook.   (*Id.* ¶ 7; Lokshin Decl. ¶ 4 & Ex. A.)

Aides are instructed to call in and out at the beginning and end of each shift.  (Lokshin Decl. ¶ 8; Pastina Decl. ¶ 6; Pustilnik Decl. ¶ 8.)  They are required to report to their coordinator or supervisor as soon as possible if they are unable to receive at least five hours of uninterrupted sleep time and three hours of uninterrupted meal time during a shift.  (Pustilnik Decl. ¶ 8; Lokshin Decl. Ex. A.)  Aides must also immediately report any changes in the patient's mental or physical condition.  (Lokshin Decl. Ex. A.)  Attentive then informs the long-term care agency,

8

which may reassess the patient's plan of care and authorize a change in the type of shift used to care for the patient.  (Pustilnik Decl. ¶ 10.)

Aides are also instructed that they should only provide services as set forth in and according to the plan of care for each patient.  (Pustilnik Decl. ¶ 9.)  Aides may not perform work outside the physician-ordered plan of care, such as providing medication, caring for the patient's family members, or engaging in heavy cleaning.  (*Id*.)  Aides are instructed that special requests from the patient or the patient's family must be discussed with the long-term care agency and approved in the plan of care.  (*Id*.)

C.     **Nasimova's Employment at Attentive**

When Nasimova joined Attentive, she completed the standard orientation process during which Attentive's policies and procedures were explained to her, which she acknowledged at her deposition.[3]  ( Nasimova Tr. at 29:12–13, 31:4 & Ruzumna Decl. Ex. D.)    Attentive's records reflect that Nasimova also signed forms acknowledging the importance of filling out time sheets accurately and abiding by the plan of care for each patient.  (Ruzumna Decl. Exs. E & F.)

Nasimova cared for only one patient during her employment at Attentive—█████ ██████████████████████—and typically worked seven live-in shifts per week except when on paid vacation.  (Nasimova Tr. at 21:22–23:2, 165:19-169:2; Golub Decl. ¶¶ 17–30.)  ████ ████████████████████████████████████████████████████████████████████ ████████████████████  (Fridman Decl. ¶ 8.)  In the course of her duties, Nasimova performed light housework for █████████, including shopping and cooking.  (*Id*. ¶ 14.)
██████████████████████████████████████████████████████████ ████████████████████████████████████████████

---

[3] During orientation, Nasimova took a brief multiple-choice test to verify her medical knowledge and her comprehension of English.  (Ruzumna Decl. Ex. O.)



(Golub Decl. ¶¶ 17, 21–22.)

(*Id.* ¶ 19.)

(*Id.* ¶¶ 9, 28.)

(*Id.* ¶¶ 9, 28, 34–35 & Ex. H; Nasimova Tr. at 56:17–58:8.)

(Golub Decl. ¶ 26; Fridman Decl. ¶ 13.)

(Golub Decl. ¶¶ 26–27.)

(*Id.* ¶¶ 23–24.)

Nasimova knew she was required to report changes in the patient's condition, or in her ability to get at least five hours of uninterrupted sleep, to her coordinator.  (Nasimova Tr. at 109:20–111:10.)  Nasimova claims that she did so.  (*Id.* 110:13–110:19.)

(Golub Decl. ¶¶ 28, 34; Fridman Decl. ¶ 17.)

**D.     Pay and Benefits Provided by Attentive**

Prior to November 2015, Attentive paid its live-in aides a flat rate for each 24-hour shift. (Rand Decl. [Dkt. #28] Exs. A & B; Pastina Decl. ¶ 7.)  Attentive initially paid Nasimova a flat rate of $135 per live-in shift, which was later increased to $140 per shift.  (Rand Decl. Ex. A.) The flat rate Attentive paid to individual aides may vary based on a number of factors, including whether the aide was assigned to a case considered especially difficult, the number of shifts

10

9410176

worked per week, and individual negotiation with the aide regarding the rate of pay.  (Pastina Decl. ¶ 7.)  However, all aides working live-in shifts during the period of Nasimova's employment received at least a minimum flat rate, which increased over time.[4]  (*Id*.)  This flat rate was intended to comply with federal and state wage payment laws as applied to the 13 hours worked during the 24-hour shift.  (Pustilnik Tr. at 18:15–19:3.)

Since the Wage Parity Act went into effect in 2012, Attentive has provided aides with benefits in addition to their salary.  (Lokshin ¶ 9; Pastina Decl. ¶ 9; Ruzumna Decl. Exs. G & H.) Since at least 2011, Attentive has provided one week of paid vacation.  (Pustilnik Decl. ¶ 13.) Since the enactment of the New York City Earned Sick Time Act in 2014, Attentive has also provided five paid sick days.  (*Id*.)  Attentive has also provided health insurance benefits since at least 2014.  (*Id*.)  Nasimova received benefits in the form of paid vacation time.[5]  (Nasimova Tr. at 166:15–167:2 & Ruzumna Decl. Ex. F).

Attentive maintains records of its aides' paystubs, written timesheets, and the electronic duty sheets generated by the call-in system aides use to record their time worked.  (Pastina Decl. ¶ 11; Pustilnik Decl. ¶ 11.)  Since at least 2012, Attentive has also provided aides with individual WTPA notices showing their regular and overtime wage rates.  (Lokshin Decl. ¶ 10; Pustilnik Decl. ¶ 14; Ruzumna Decl. Exs. I & J.)  Nasimova received and signed WTPA notices. (Nasimova Tr. at 29:22–23 & Ruzumna Decl. Exs. I & J.)

---

[4] Since November 2015, Attentive has paid its live-in aides on an hourly basis for the hours they have worked.  (Rand Decl. Ex. B ; Pastina Decl. ¶ 8.)  Consistent with state and federal law, the current hourly rate applicable to live-in aides is $11.00 and the current overtime rate is $16.50 per hour.  (Pastina Decl. ¶ 8.)

[5] Aides currently have the option of either enrolling in a health insurance plan or receiving a package of alternative benefits that includes a cell phone and transit allowance and up to $500 per year in a Flexible Spending Account to help pay for medical expenses.  (Pastina Decl. ¶ 5; Pustilnik Tr. at 18:15–21:12 & Ruzumna Decl. Exs. P & Q.)

11

9410176

### E.      Nasimova's DOL Claim

A few months after she left Attentive for new employment, Nasimova filed a claim with the NYDOL alleging that she had not received proper payment from Attentive for her hours worked, including holiday and vacation pay.  (Ruzumna Decl. Ex. K.)  Attentive chose not to contest the claim, and taking her allegations as true, the NYDOL calculated that Nasimova was owed ████████ in unpaid regular, holiday, and overtime wages for the entire period of her employment with Attentive, plus liquidated damages.  (Ruzumna Decl. Ex. L.)  Attentive paid this amount in full to the NYDOL, which provided the payment to Nasimova.  (Ruzumna Decl. Exs. M & N.)

### F.      Nasimova's Claims and the Purported Class

Nasimova commenced this action in February 2016.  (Compl. [Dkt. # 1].)  She asserts claims for failure to pay:  (1) an overtime premium of one and a half times the regular wage rate for overtime work, in violation of  the FLSA and the NYLL; (2) minimum wages for the full 24 hours worked during a live-in shift in violation of the FLSA and the NYLL; (3) an overtime premium of one and a half times the New York State minimum wage rate for overtime work, in violation of the NYLL; (4) spread of hours wages in violation of the NYLL; and (5) the minimum wage under the Wage Parity Act.  She also asserts a state law claim for failure to provide sufficient notices and wage statements as required by the WTPA.  (*Id.* ¶¶ 2–3; 66–101.)

Having taken discovery, Nasimova now seeks preliminary certification of an FLSA collective action, and requests that the Court authorize notice to (Not. of Mot. [Dkt. # 25] at 2):

> [A]ll current and former employees of Defendants (a) who are or were formerly employed by Defendants as home health aides at any time since February 29, 2013 to the entry of judgment in this case (the "Collective Action Period"), (b) who were non-exempt employees within the meaning of the FLSA, who were not paid minimum wages and/or overtime compensation at rates not less than one and one-half times their regular rate of pay for hours worked in excess of forty (40) hours per workweek.

12

9410176

She also seeks to certify the following class with respect to her New York state law claims (*id.*):

> [A]ll current and former employees of Defendants (a) who are or were formerly employed by Defendants as home health aides at any time since February 29, 2010 to the entry of judgment in this case (the "Class Action Period"), (b) who were not paid proper wages under New York State Law (including minimum wages, overtime wages, Wage Parity Act wages, spread of hours wages and Wage Theft Prevention Act damages).

## **ARGUMENT**

Nasimova has not met her burden of showing that the Court could properly authorize notice to potential FLSA collective action members, much less overcome the higher burden of demonstrating that certification of a Rule 23 class regarding her state law claims is appropriate here. Courts in the Second Circuit use a two-step method for determining whether to authorize notice of an FLSA collective action. *Myers v. Hertz Corp.*, 624 F.3d 537, 545–55 (2d Cir. 2010). As the first step, the court makes an initial determination whether to authorize notice to potential opt-in plaintiffs who may be "similarly situated" to the named plaintiffs with respect to whether an FLSA violation has occurred. *Id.* at 555 (citations omitted). Authorization is appropriate only if the plaintiff makes a "modest factual showing" that she and potential opt-in plaintiffs "together were victims of a common policy or plan that violated the law." *Id.* (citations omitted). After full discovery, the action may be de-certified if the record reveals that any opt-in plaintiffs were not similarly situated. *Id.* (citations omitted). But even at the first stage, "certification is not automatic." *Cowell v. Utopia Home Care, Inc.*, No. 14-CV-736 (LDW)(SIL), 2016 U.S. Dist. LEXIS 104495, at *13 (E.D.N.Y. Aug. 8, 2016) (citations omitted). A plaintiff seeking conditional certification must offer "actual evidence of a factual nexus" between herself and potential opt-in plaintiffs. *Id.* (citations omitted).

Nasimova's only attempt to do so here is her assertion that Attentive had a policy of paying live-in aides a flat rate, which she contends was inadequate. She has made *no* showing,

and cannot show, that she and other live-in aides were similarly situated with respect to the degree to which they provided services falling within the companionship exemption or the extent to which they regularly received three hours for meals and eight hours for sleep.  Her own testimony on this issue proves that this is an individualized question: she testified that she was unable to get the requisite sleep (despite evidence to the contrary), but the one other aide she had knowledge of reported that "after 10 she sleeps until the morning" (Nasimova Tr. at 178:11–14).  This is fatal to her request to authorize notice of an FLSA collective action.  *See Severin v. Project OHR, Inc.*, 10 Civ. 9696 (DLC), 2012 U.S. Dist. LEXIS 85705, at *9 (S.D.N.Y. June 20, 2012) (explaining denial of authorization of FLSA collective action notice based on the individualized inquiry necessary to determine the applicability of the companionship exemption).

For these reasons and others, Nasimova also cannot meet the higher burden of showing that Rule 23's requirements for certifying a class action are met here.  Rule 23's requirements are "more stringent" than the FLSA's "similarly situated" requirement, and to satisfy them, Nasimova must provide "evidence, by affidavits, documents, or testimony" meeting her burden.  *Severin*, 2012 U.S. Dist. LEXIS 85705, at *12 (citations omitted).  "[A] district judge may not certify a class without making a ruling that each Rule 23 requirement is met."  *In re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24, 27 (2d Cir. 2006).  Certification under Rule 23 is appropriate:

> only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *see also Brown v. Kelly*, 609 F.3d 467, 475 (2d Cir. 2010).  And because Nasimova seeks to certify a class under Rule 23(b)(3), she must also establish that (1) questions of law or fact common to class members "predominate" over any questions affecting only individual members; and (2) class litigation is "superior" to other available methods for fairly

14

and efficiently adjudicating the controversy.  Fed. R. Civ. P.  23(b)(3); *Salon Fad v. L'Oréal USA, Inc.*, No. 10 Civ. 5063 (DLC), 2011 U.S. Dist. LEXIS 103936, at \*14 (S.D.N.Y. Sep. 14, 2011).  Because the application of the companionship and live-in regulations require individualized, fact-based inquiries, Nasimova cannot show—and indeed, has presented no evidence showing—that Rule 23's requirements could be met here.

## I.      NASIMOVA'S PROPOSED COLLECTIVE ACTION SHOULD NOT BE CERTIFIED BECAUSE SHE IS NOT SIMILARLY SITUATED TO OTHER CLASS MEMBERS

Nasimova's proposed federal collective action cannot be certified because if the companionship exemption to the FLSA applies, it is a complete bar to her claims, and determining the exemption's applicability is an individualized, fact-specific inquiry.  For each aide, the factfinder would need to determine what work the aide actually performed, considering evidence such as each patient's individualized plan of care and testimony regarding the number of hours and types of household work required.  (*See supra* pp. 3–4, 7–9.)  Multiple federal courts in New York have held that this fact-specific inquiry makes collective actions unsuitable for resolving claims of individuals potentially covered by the companionship exemption. *Severin*, 2012 U.S. Dist. LEXIS 85705, at \*9; *Cowell*, 2016 U.S. Dist. LEXIS 104495, at \*19-20.

Nasimova does not address these cases in her brief, and they cannot be distinguished from the case here.  For example, in *Cowell*, 2016 U.S. Dist. LEXIS 104495, the plaintiff brought a proposed collective action against her employer, a home health care agency, asserting minimum wage and overtime claims under the FLSA and the NYLL.  The court denied certification of a collective action, explaining that "the unique and individualized Plans of Care that are prepared for Utopia patients, and which Utopia HHAs are required to follow, result in 'very fact-specific inquiries' that are not 'susceptible . . . to a similarly-situated person analysis that would support the issuance of a collective action notice.'"  *Id.* (quoting *Severin*, 2012 U.S.

9410176

Dist. LEXIS 85705, at *3).  It further explained that allowing a collective action would "fail to promote judicial efficiency" because the court would have to "conduct thousands of mini-trials" to determine the percentage of time each aide spent on activities that "count[ed] for the purpose of the twenty percent calculation."  *Id.* at *20–21.  The *Severin* court reached the same result. *Severin*, 2012 U.S. Dist. LEXIS 85705, at *9 ("[T]he plaintiff would have to establish on an individual plaintiff-by-plaintiff basis that somehow they performed general household work more than 20 percent of the time . . . . So these are very fact-specific inquiries that aren't really susceptible, I think, to a similarly-situated person analysis that would support the issuance of a collective action notice.").

As in *Severin* and *Cowell*, each of Attentive's patients has a personally tailored plan of care which provides guidance for the aides and sets forth the tasks that the aides are expected to perform for the patient.  (*See supra* pp. 7–9.)  And determining what tasks the aides actually performed requires considering individualized evidence—for example, Nasimova has offered a declaration stating that she spent "up to 30%" of her time on housework (Nasimova Decl. [Dkt. # 25-2] ¶ 24), but Attentive has offered evidence to the contrary, including evidence that she never complained about the time spent on housework.  (*See supra* p. 10.)  Nasimova describes doing types of household work, such as shopping for groceries (Nasimova Tr. at 147:19–148:3), that does not count toward the 20% threshold for the companionship exemption to apply (*see supra* pp. 3–4).  Examining each plan of care for every patient whom every putative plaintiff worked for, determining the percentage of heavy cleaning performed by each putative plaintiff, and analyzing whether that work counted toward the 20% threshold would defeat the purpose of collective actions—to encourage judicial economy by "efficient resolution in one proceeding of common issues of law and fact."  *Hoffmann-La Roche v. Sperling*, 493 U.S. 165, 170 (1989).

Nasimova cannot show that she is similarly situated to the putative FLSA collective

16

action members for two additional reasons.  First, Nasimova's proposed collective action

includes individuals who, unlike her, were employed after the FLSA companionship exemption

regulation changed.  (*See supra* pp. 4, 7, 12.)  This rule change is potentially dispositive of class

members' claims and the rate of pay that applied to them, and the effective date of the change is

apparently a contested issue here.  Defendants assert that the effective date of the change was

November 12, 2015, when the DOL began enforcing the new rule[6] (*see supra* p. 4), while

Nasimova assumes that the rule went into effect on January 1, 2015 (P. Mem. [Dkt. # 25-3] at

3).  Because this dispute makes no difference to Nasimova's own FLSA claim, as she was no

longer employed by Attentive in January 2015, and she has no personal interest in its resolution,

she is not similarly situated to all putative collective action members.

Second, Nasimova has not shown that she is similarly situated to collective action

members with respect to the number of compensable hours of work performed during live-in

shifts.  As explained above, the federal rule for determining compensable hours worked during a

24-hour shift depends on, among other things, whether the employee has adequate sleep

facilities, usually has at least five hours of uninterrupted sleep, and has an agreement with her

---

[6] There is significant legal authority to support this position. *See Bangoy v. Total Homecare Sols., LLC*, No. 1:15-CV-573, 2015 U.S. Dist. LEXIS 177859, at *6–8 (S.D. Ohio Dec. 21, 2015); *Flamer v. Maxim Healthcare Servs.*, No. - JFM-15-2070, 2015 U.S. Dist. LEXIS 182416, at *1 (D. Md. Oct. 26, 2015) ("[T]he effective date of the regulation referred to in the motion could not become effective on January 1, 2015").  When the district court vacated the rule before its effective date, it became a nullity and unenforceable.  *See Natural Res. Defense Council, Inc. v. U.S. E.P.A.*, 683 F.2d 752, 762 (3rd Cir. 1982) ("In short, without an effective date a rule would be a nullity because it would never require adherence.").  Moreover, permitting Plaintiffs to recover for a violation of the rule while the vacatur was in effect would give the rule an impermissible retroactive effect. *Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 37 (2000).  In addition, the fact that the DOL stated that it would not bring enforcement actions for violations that occurred before the Court of Appeals reinstated the rule indicates that the rule should not be given retroactive effect in cases between private parties.  *Skidmore v. Swift & Co.*, 323 U.S. 134, 139–40 (1944) ("Good administration of the Act and good judicial administration alike require that the standards of public enforcement and those for determining private rights shall be at variance only where justified by very good reasons.").  Despite this weight of authority, Defendants are aware of one court in this Circuit that concluded that the effective date of the final rule remains January 1, 2015.  That court granted an interlocutory appeal on the issue, which remains pending.  *Kinkead v. Humana, Inc.*, No. 3:15-cv-01637(JAM), 2016 U.S. Dist. LEXIS 143000, at *10 (D. Conn. Oct. 13, 2016).

employer to exclude sleep time.  *See supra* pp. 5–6; *Bonn-Wittingham v. Project O.H.R. (Office for Homecare Referral), Inc.*, No. 16-CV-541 (ARR)(JO), 2016 U.S. Dist. LEXIS 172767, at *21 (E.D.N.Y. Dec. 12, 2016) ("[N]either the FLSA nor the NYLL requires employers to compensate employees working overnight shifts for sleeping and meal breaks."); *Severin*, 2012 U.S. Dist. LEXIS 85705, at *24 (finding NYDOL's interpretation to be consistent with "the plain meaning of the regulatory language").

Determining whether it was lawful to exclude sleep time from aides' wages requires a fact-specific, individualized inquiry that cannot be resolved through a collective action.  For each aide, the court would need to engage in a mini-trial to determine how many hours of sleep she received per night and what type of sleeping accommodations were provided to her.  This would require evidence and testimony regarding the home and medical condition of each patient cared for by each opt-in plaintiff, and would vary as the condition of those patients changed.  For example, the plan of care for Nasimova's patient, ███████, reflected the nurse's assessment that she could sleep through the night for the entire time period at issue here, and the testimony of the nurse coordinator and ████████████ is that contrary to Nasimova's claim, she did not complain about receiving less than eight hours of sleep per night.  (*See supra* p. 10.)  And each aide's situation must be considered separately: according to Nasimova herself, another aide she knows who worked 24-hour shifts while employed at Attentive said that "after 10 she sleeps until the morning."  (Nasimova Tr. at 178:11–14.)  Resolving whether each aide received inadequate sleep such that they should have been compensated for more than 13 hours per live-in shift cannot efficiently be done in one proceeding.  Authorization to proceed on a collective basis and send a collective action notice should therefore be denied.[7]

---

[7] If the Court were to decide otherwise, Defendants request that the Court order the parties to meet and confer regarding the form and content of the notice, and bring any dispute to the Court for resolution, rather than authorizing the notice proposed by Nasimova.  That notice is potentially misleading and confus-

9410176

## II.     NASIMOVA HAS NOT SHOWN THAT HER PROPOSED STATE LAW CLASS ACTION MEETS RULE 23'S REQUIREMENTS

Nasimova also has not met, and cannot meet, the even higher evidentiary burden of showing that Rule 23 certification is appropriate here, for the same and additional reasons.

### A.     Nasimova Cannot Establish that Common Issues Predominate Because Determining the Number of Hours Worked by Aides Working Live-In Shifts Is an Individualized Inquiry

First and foremost, Nasimova has not met her burden of establishing that her state law claims implicate common questions of law and fact ("commonality") that predominate over individualized inquiries necessary to finally adjudicate those claims ("predominance"). Establishing commonality requires showing that putative class members "have suffered the ***same*** injury . . . [not] merely that they have all suffered a violation of the same provision of law." *Wal-Mart Stores, Inc.*, *v. Dukes,* 564 U.S. 338, 350 (2011) (emphasis added).  Thus, "[w]hat matters to class certification is not the raising of common 'questions'—even in droves—but, rather, the capacity of a classwide proceeding to generate common ***answers*** apt to drive the resolution of the litigation."  *Id.* (internal citations and quotation marks omitted).  Among other things, Nasimova must "show that more substantial aspects of this litigation will be susceptible to generalized proof for all class members than any individualized issues." *Myers*, 624 F.3d at 551 (internal citations and quotation marks omitted).  She cannot do so here.

Resolving Nasimova's state claims requires resolving the same questions about the applicability of the companionship exemption and live-in exemption as her federal claims.  As explained above, the NYDOL has established, in an interpretation upheld by multiple courts, that live-in employees may be paid 13 hours per 24-hour shift if they are afforded eight hours of

---

ing for several reasons.  For example, Nasimova proposes a single notice to be sent to both a New York state class and FLSA class, although the proposed classes are not co-extensive, and does not adequately inform putative class members as to how they may opt out of the New York state class.

sleep per night; actually receive five hours of uninterrupted sleep; and are afforded three hours for meals. *See supra* pp. 5–6; *Bonn-Wittingham*, 2016 U.S. Dist. LEXIS 172767, at *21; *Severin*, 2012 U.S. Dist. LEXIS 85705, at *24. Nasimova does not attempt to distinguish these cases or argue that the NYDOL's interpretation is inapplicable here.[8]

This Court should follow *Severin* and hold that the inquiry necessary to determine how many compensable hours a live-in aide worked defeats the commonality and predominance requirements. *Severin*, 2012 U.S. Dist. LEXIS 85705, at *20 (quoting *Myers*, 624 F.3d at 551). As noted above, this inquiry requires individualized evidence regarding each patient's condition and plan of care, which may vary over time, precluding any "economies of time, effort, and expense" if this were to proceed on a class basis. *Myers*, 624 F.3d at 547. Nasimova offers no evidence that Attentive had a policy of improperly relying on the live-in rule. To the contrary, the evidence is that Attentive informed her and other aides that they were entitled to receive at least eight hours of sleep, including five continuous hours, and that Nasimova's patient regularly slept through the night. (*See supra* pp. 8–10.) Without evidence of an improper policy, an NYLL claim such as Nasimova's is not susceptible to class-wide resolution because "[w]hether or not a home attendant actually received eight hours of sleep time and five hours of continuous sleep is an inherently fact-specific inquiry that is likely to hinge heavily on the characteristics of particular clients to whom sleep-in home attendants were assigned." *Severin*, 2012 U.S. Dist. LEXIS 85705, at *33. Nasimova does not attempt to distinguish *Severin* because she cannot, and

---

[8] Although Nasimova does not cite them in her brief, Defendants are aware of New York state court decisions that are contrary to *Severin* and *Bonn-Wittingham*. *See Andryeyeva v New York Health Care, Inc.*, 994 N.Y.S.2d 278, 285 (Sup Ct. Kings Cnty. 2014) (concluding that non-residential live-in home care workers should be paid for 24 hours); *Tokhtaman v. Human Care, LLC*, 2016 NY Slip Op 31606(U), ¶¶ 8–9 (Sup. Ct. N.Y. Cnty. 2016) (following *Andryeyeva*); *Lai Chan v. Chinese-Am. Planning Council Home Attendant Program, Inc.*, 21 N.Y.S.3d 814, 828 (Sup. Ct. N.Y. Cnty. 2015) (same). Those New York state cases are wrongly decided because they did not give the required deference to the NYDOL's interpretation of its minimum wage regulation as being in accord with the federal DOL's interpretation. *See Severin*, 2012 U.S. Dist. LEXIS 85705, at *23–27.

9410176

her request for certification should be denied for the same reasons as in *Severin*.

**B. The Applicability of the Companionship Services Exemption Also Requires Individualized Inquiry**

Similarly, Nasimova cannot show that common issues predominate as to the proposed NYLL class because her state wage claims also require the Court to decide the applicability of the federal companionship exemption. As shown above, determining whether an aide falls under the FLSA companionship exemption is a fact-specific inquiry that federal courts in New York have repeatedly held is unsuitable for collective action, let alone a Rule 23 class action. *See Severin*, 2012 U.S. Dist. LEXIS 85705, at *9; *Cowell*, 2016 U.S. Dist. LEXIS 104495, at *19–20. And because an aide's rate of pay under the NYLL turns on whether the companionship exemption applied (*see supra* p. 5), a class action on Nasimova's NYLL claim would require numerous mini-trials into the nature of each patient's plan of care, and there could not be a uniform decision as to each member of the class. *See Severin*, 2012 U.S. Dist. LEXIS 85705, at *20 ("The predominance of these individualized, fact-specific questions [concerning the companionship services exemption] renders the plaintiffs' overtime claims ill-suited for classwide resolution."); *Cowell*, 2016 U.S. Dist. LEXIS 104495, at *20–21.

**C. Nasimova's Other State Law Claims Necessitate Individualized Inquiries**

Nasimova also has not offered evidence establishing a uniform policy by Attentive not to comply with spread of hours, wage parity and WTPA requirements, and thus has not met her burden of showing commonality and predominance with respect to those claims.

Nasimova's spread of hours claim depends on whether the total compensation aides received was inadequate under state law, and that question cannot be decided without determining whether and how Attentive was required to comply with minimum wage and overtime requirements—issues that cannot be decided on a class basis. In *Moreno v. Future Care Health Servs., Inc.*, No. 500569/13, 2015 N.Y. Misc. LEXIS 3371, at *4, 14–15 (Sup. Ct.

21

9410176

Kings Cnty. May 4, 2015), the court considered similar allegations by home health aides who worked 24-hour live-in shifts and agreed that under New York law, they failed to establish that "questions of law or fact common to the class predominate[d] over questions of law or fact affecting individual class members" with respect to a spread of hours claim.  The court noted that, as here, there was no affirmative evidence of a *policy* to deny class members spread of hours wages, and rejected arguments that (i) paying a flat rate (that was less than the flat rate provided by Attentive during the same time period) or (ii) failing to explicitly mention spread of hours wages on paystubs was evidence of such a policy.[9]  *Id.* at *11–14.  The court concluded that the plaintiffs' claims ultimately turned on whether the defendants properly deducted sleep and meal time from their live-in shifts, "a heavily fact specific inquiry that militates against any finding that common questions of law or fact predominate over individual issues regarding . . . spread time for such live-in shifts."  *Id.* at *13–14.  The Court should hold the same here.

Nasimova's state Wage Parity Act claim also cannot be certified because the evidence refutes her assertion that Attentive had a policy of noncompliance with the law.  According to her own declaration, compensation equated to an hourly rate of $10.38 per hour at the outset of her employment, increasing to $10.77 per hour on March 1, 2013.  (Nasimova Decl. ¶ 6.) During her employment with Attentive, the Wage Parity Act required paying the equivalent of only $10.35 per hour (*see supra* p. 6), and Nasimova admits she received a greater wage— without even taking her paid vacation into account (Nasimova Decl. ¶ 6; Nasimova Tr. at

---

[9] For example, in 2012, when the minimum wage was $7.25 an hour, Nasimova undisputedly received a flat rate of $135 per live-in shift, which exceeds the minimum flat rate of $101.50 as calculated by the *Moreno* court.  Nasimova may argue that she should have received more given the number of shifts she worked per week and the overtime wages she claims she were due as a result, but this would only confirm that the spread-of-hours claim is also not susceptible to class treatment because it requires an aide-by-aide inquiry into how many and what type of shifts they worked, and what pay was due for those shifts in light of the applicable exemptions.  Further, the *Moreno* court additionally rejected the argument that showing that a handful of aides (10, in that case) had been underpaid for certain weeks established a policy of non-compliance, and Nasimova has not even attempted to make a more compelling factual showing here. *Moreno*, 2015 N.Y. Misc. LEXIS 3371, at *14–15.

9410176

166:15–167:2 & Ruzumna Decl. Ex. F).  Determining whether other aides received wages and benefits meeting the Wage Parity Act would require considering evidence on an aide-by-aide basis to evaluate any claims under the Act, rendering this claim unsuitable for class treatment.

Similarly, Nasimova offers no evidence of a policy of WTPA violations.  To the contrary, discovery has shown that she received the notices she originally alleged Attentive did not provide.  ((Compl.  at ¶ 65; *see supra* p. 11.)  Nasimova now claims that Attentive's "notices and payroll documents did not correctly identify the rate being paid to the home health aides and did not indicate the correct hours worked" (P. Mem.at 3–4), but the documents show that Nasimova annually signed WTPA notices showing her regular hourly rate and overtime rate.  (Nasimova Tr. at 29:22–23 & Ruzumna Decl. Exs. I & J.)  And while she contends that her paystubs did not adequately break down her rates of pay and hours worked, many of the paystubs for other aides that she relies on provide this information.  (Rand Decl. Ex. B [Dkt. #28])  Further, if an employee was properly paid, that is a complete defense to a WTPA claim regarding wage statements.  N.Y. Lab. Law § 198(1-d).  As shown above, whether aides were owed more than they were paid can only be resolved by finding facts concerning the specific work each aide actually performed, rendering any WTPA claim unsuitable for class resolution.[10]

### D.    Nasimova Has Not Shown and Cannot Show that She Is a Typical or Adequate Class Representative

Nasimova's failure to establish commonality and predominance is sufficient to require denying her motion.  But she also cannot satisfy Rule 23's typicality requirement, which requires showing that she "possess[es] the same interest and suffer[ed] the same injury as the class

---

[10] Evidence that Nasimova received WTPA notices also demonstrates that class-wide resolution of any WTPA claim would require a review of the individual facts and circumstances of each aide and the notices received, defeating the commonality and predominance requirements.  Further, Nasimova cannot assert any claim at all regarding the provision of notices other than the notice required at the time of hire; there is no private right of action for failure to provide subsequent notices under the WTPA.  *Guaman v. Krill Contr. Inc.*, No. 14-CV-4242 (FB) (RER), 2015 U.S. Dist. LEXIS 74567, at *19–20 (E.D.N.Y. May 20, 2015) *report and  recommendation adopted by*, 2015 U.S. Dist. LEXIS 74432 (E.D.N.Y. June 9, 2015).

23

members," *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 156 (1982), or adequacy

requirement, which requires showing that "there is no conflict of interest between the named

plaintiffs and other members of the plaintiff class," *Ansoumana v. Gristede's Operating Corp.*,

201 F.R.D. 81, 87 (S.D.N.Y. 2001) (citations omitted).

    *First,* as shown above, there can be no dispute that the companionship exemption was

applicable to home health aides employed by agencies when Nasimova worked for Attentive, but

the same is not true of aides who worked after the applicable regulation changed.  For aides

employed after January 1, 2015, the questions of when the new federal regulation regarding the

companionship services exemption became effective—and how wages should have been

calculated under the new regulation—are potentially dispositive of their FLSA claims and impact

resolution of their NYLL claims.  Because Nasimova has no personal interest in litigating these

questions (*see supra* p. 17), she does not "possess the same interest"—nor did she "suffer the

same injury"—as all members of the proposed class.  *Falcon*, 457 U.S. at 156.

    *Second*, Nasimova's state Wage Parity Act claims are not typical of the proposed class

because, as described above, she admits she received a wage exceeding the Wage Parity Act's

requirements.  Perhaps recognizing this fact, Nasimova now argues only that "[a] New York

State class should also be certified because ***on and after March 1, 2014***, Defendants failed to

pay minimum wages under the Wage Parity Act . . . ."  (P. Mem. at 4) (emphasis added).

However, Nasimova is not part of this class: she was no longer employed at Attentive after

March 1, 2014, and has no claim for any purported violation of the Wage Parity Act during this

time period.  "A plaintiff without a cognizable claim is definitionally atypical of individuals with

claims, and for similar reasons, inadequate to represent the class."  *Franco v. Allied Interstate

LLC*, No. 13-cv-4053 (KBF), 2015 U.S. Dist. LEXIS 160688, at *8 (S.D.N.Y. Nov. 30, 2015);

*see also O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) ("[I]f none of the named plaintiffs

24

purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself [or herself] or any other member of the class.").  Moreover, Attentive has provided additional benefits since Nasimova left the company (*see supra* p. 11), rendering her claims further atypical of the class.  Nasimova has no personal interest in litigating any disputes as to whether these benefits were provided and whether they satisfied the Wage Parity Act, making her an atypical and inadequate class representative.

*Third*, Nasimova is subject to a unique defense due to her recovery of purported unpaid wages through a parallel NYDOL action.  "Regardless of whether the issue is framed in terms of the typicality of the representative's claims . . . or the adequacy of its representation . . . there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it."  *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990) (internal citations omitted).  Unlike others in the purported class, Nasimova has already received a payment for purported unpaid wages (*see supra* p. 12), for which she cannot make a double recovery in this litigation.  *Muhammed Chowdhury v. Hamza Express Food Corp.*, No. 15-3142-cv, 2016 U.S. App. LEXIS 21870, at *4 (2d Cir. Dec. 7, 2016) (citations omitted) ("Double recovery is generally disfavored where another source of damages already remedies the same injury for the same purpose.").

Because Nasimova has not shown that any of her claims could be resolved on a representative basis without need for individualized fact-finding as to each aide's particular circumstances, Nasimova's motion should be denied.

## <u>CONCLUSION</u>

For the foregoing reasons, Nasimova's Motion for Certification of Class and Collective Action should be denied.

25

Dated: January 13, 2017          By:      /s/ Daniel S. Ruzumna

                                          Daniel S. Ruzumna
Catherine A. Williams
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036-6710
Telephone: 212-336-2000
druzumna@pbwt.com
cawilliams@pbwt.com

*Attorneys for Defendants Attentive Home Care Agency Inc., d/b/a Always Home Care, and Yelena Pustilnik*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 13, 2017, I caused the foregoing memorandum together with the Declarations of Daniel S. Ruzumna, Yuriy Fridman, Elena Lohksin, Yelena Pustilnik, Irina Pastina, and Svetlana Golub, and exhibits thereto to be served by email on the following counsel of record:

William C. Rand, Esq.
Law Office of William C. Rand
501 Fifth Avenue, 15th Floor
New York, NY 10017
wcrand@wcrand.com

*Attorney for Plaintiffs*

By:      /s/ Daniel S. Ruzumna
         Daniel S. Ruzumna

9410176